UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRAL S. REED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 12-cv-05947 ) |
| ALLIED WASTE SERVICES, INC. and REPUBLIC SERVICES, INC., | ) ) ) Judge Sharon Johnson Coleman ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Darral Reed, filed his Complaint on July 27, 2012, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq., ("IHRA") and 42 U.S.C. § 1981 ("Section 1981"), against his former employer Allied Waste Services, Inc. ("Allied"). Allied moves for summary judgment [40] on all claims.[1] For the reasons stated herein, this Court grants the motion.

**Background**

As an initial matter, the Court finds that Reed's opposition to Allied's summary judgment fails to comply with Local Rule 56.1. This Court is entitled to strict compliance with Local Rule 56.1. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006). Reed's opposition does not comply with L.R. 56.1(b) in that for each of the statements of fact presented by Allied in its L.R. 56.1(a) statements of undisputed material fact Reed did not counter with admissible evidence demonstrating

---

[1] After Allied's motion for summary judgment had been fully briefed, plaintiff's counsel was permitted to withdraw. Darral Reed, now *pro se*, filed additional material in opposition to Allied's summary judgment. On July 11, 2014, this Court allowed Allied time to respond, if it chose, to that material and for Reed to reply to their response. Allied did not file a response to Reed's exhibits. On August 12, 2014, Reed filed a motion to reopen discovery [55] and a motion to amend the supporting documents of discrimination [56]. This Court denies both motions.

1

a factual dispute. *See N.D. Ill. L.R. 56.1(b); see also Roger Whitmore's Auto. Servs. v. Lake Cnty.,* 424 F.3d 659, 664 n.2 (7th Cir. 2005). Instead, for those factual statements that Reed attempts to dispute, he has presented improper argument, conclusions, and non-responsive allegations. Reed however admits the majority of the facts presented in Allied's Rule 56.1 Statement of Material Facts. (*See* Dkt. 44). This Court deems admitted those paragraphs that Reed does not expressly admit based on his failure to dispute the statements of fact with admissible evidence and citations to the record. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1139 (7th Cir. 1997).

The following facts are undisputed. Allied provides waste collection, recycling, and disposal services to commercial and industrial customers in Chicago. Reed worked as a commercial driver for Allied from July 28, 1997, until his termination on October 14, 2008. Allied maintains an Employee Handbook that contains policies and procedures relating to all aspects of employment with Allied. The Handbook was in effect at least from 2002 through Reed's termination. All Allied drivers must abide by Allied's rules, including "Violation of any Company policy, work rule or procedure" may result in "immediate discharge." Allied drivers also receive an Employee Safe Driving and Safe Work Practices Handbook that states "the Company will initiate disciplinary action up to and including immediate discharge" for "[f]ailure to report all personal injuries and accidents to your supervisor or a Company official, including damage to the property of the Company, employee, customer or member of the public, regardless of who is responsible for the damage." Reed acknowledges that he received the Safety Handbook.

The terms and conditions of Allied's commercial drivers' employment are subject to a collective bargaining agreement between Allied and the International Brotherhood of Teamsters Local 731. Pursuant to the agreement, the Company may discharge employees for just cause. The bargaining agreement provides that Allied will follow progressive discipline but that "no notice need be given before an employee is discharged for just cause," for among other reasons, "recklessly

2

resulting in a serious accident while on duty" and "failure to report an accident." Reed testified that he understood that failure to report an accident was an immediately dischargeable offense.

Drivers are generally assigned a regular route. When a route becomes available, Allied posts the route for employee bidding. Trucks are assigned by route, not by driver. Drivers report to route supervisors who, in turn, report to the operations manager. Reed had various route supervisors during his employment, including Rodney Huguley, Dave Heyboer, Randall Radatz, and William Baker. These route supervisors reported to Jim Woods, Operations Manager, who also hired Reed. Woods reported to Mike McEnerney, General Manager. Route supervisors routinely observe drivers on their routes to ensure they are following proper work and safety procedures. Drivers are typically observed once per month. If an employee is injured on the job or observed violating a safety procedure, then he or she will be observed more frequently.

Reed was assigned to Route 433 from nine years. In early 2007, while Reed was on vacation, he received a call from another employee saying he had heard that Reed would be assigned to another route. Reed spoke to Randall Radatz, his supervisor and asked why he was being reassigned. Radatz told him "they're burning your route out," meaning that other employees were doing his route more quickly. In March 2007, Reed was assigned to Route 598, which Reed calls the "punishment route" because it purportedly involves strenuous work and has a lot of stops that have compactors on them. Reed could have bid on another route but he did not do so. In April 2007, Reed submitted a written request to be transferred to roll off driver. The request was granted in August 2007 and Reed was assigned to Truck 3053, which did not have air conditioning. Reed asked to use a spare truck, which he did for about a month until the spare truck was given to another driver.

In March 2008, Reed suffered a work-related injury to his knees that require him to be off for two weeks and to attend physical therapy. Reed's physical therapy appointments were at 1:30pm

3

on Tuesdays and Fridays. Reed's regular working schedule was approximately from 6:00 a.m. to 3:30 p.m. In April 2008, Hencinski and Woods met with Reed and informed him they would change his start time and put him on nights so that he could take care of his physical therapy during the day. Reed worked nights until his termination in October 2008.

Throughout his employment with Allied, Reed was subject of various types of discipline.

- February 2, 2004: disciplinary notice for excessive tardiness/absence for failing to report to work.
- August 2, 2004: first written warning for an overweight truck.
- August 29, 2004: verbal counseling concerning a driver's alert from a caller who claimed that Reed had failed to stop at a yield sign when making a right turn and had cause the driver to slam on the brakes.
- March 22, 2005: disciplinary notice for excessive tardiness/absence (Reed's sixth attendance point in a twelve month period.)
- August 12, 2005: disciplinary letter for excessive tardiness. Reed testified that he does not believe that it was given to him because of his race.
- December 27, 2005: driver's alert or written warning because a member of the public called to complain that Reed failed to stop when making a left turn and had caused the caller to break and swerve. Reed testified that he does not believe it was given to him because of his race.
- January 26, 2006: letter of termination for excessive tardiness. Reed was allowed to return to work under a last chance agreement and put on probation for one year. Reed testified that he does not believe he was terminated because of his race.
- November 2006: written warning for failure to maintain driving credentials (failing to update

his medical card). Reed testified that he does not believe it was given to him because of his race.

- March 5, 2008: written warning for excessive tardiness. Reed testified that he does not believe it was given to him because of his race.

- April 8, 2008: written warning for failure to follow instructions for failure to report an on the job injury to his supervisor. Reed does not recall receiving this warning.

- October 13, 2008: Reed received his sixth point for attendance in twelve months when he called off work. Reed did not receive this warning.

Reed did not grieve any of these disciplinary actions.

On October 8, 2008, Reed began his shift at 3:02 p.m. and left the yard to begin his route at 3:18 p.m. He worked until about 1:30 a.m. During his shift, he was involved in an accident at Marquette School on 6550 South Richmond. Reed submitted a route sheet reflecting that he went to Marquette School at 7:37 p.m. and finished at 9:09 p.m. Reed testified that he disconnected the two main hoses on the compactor, then backed the truck up and hooked the cable to begin to pull the container out. As he was pulling the container, Reed noticed the pump fall over and that there were two more hoses that were still connected to the container. Reed tried to call his supervisor twice but there was no answer. Reed left a message asking him to call back but did not explain the reason for the call. Reed then called Mike Daugherty, the night dispatch. Daugherty documented that Reed called him on October 8, 2008, and reported that the hydraulic hoses at the customer site were already broken, not that Reed had broken them. The customer contacted Allied and reported that their surveillance tape showed an Allied driver causing the damage to their equipment. Allied personnel reviewed the surveillance tape of the incident, which shows Reed causing the damage to the customer's equipment. Two days after the incident, when Reed was confronted by Baker about the damage, he admitted to causing the hoses to break. Hencinski determined the Reed had caused

the damage and failed to report the incident.

On October 14, 2008, Hencinski, Woods, and Troy Kohler met with Reed and terminated his employment. They presented him with a notice of discharge, which Reed refused to sign. Reed's personnel file contains two signed statements by Hencinski and Woods concerning the termination meeting. The statements note that during the meeting, Kohler specifically asked Reed if he had caused the damage to the customer's compactor and Reed replied that he had not, that he found the damage upon his arrival at the customer's location. Hencinski's statement reflects that he asked Reed a second time whether he had caused the damage and he responded that he had not. Reed grieved the discharge and a grievance hearing followed. Reed did not file an unfair labor charge for his lack of legal representation at the grievance hearing.

On January 7, 2009, Reed filed a discrimination charge with the Equal Employment Opportunity Commission, alleging discrimination based on race, color, disability, and retaliation. This lawsuit followed.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

*1. Statute of Limitations*

Allied first argues that the majority of Reed's claims of discrimination are time-barred. Claims arising under Section 1981 are subject to a four year statute of limitations. *Dandy v. UPS,* 388

6

F.3d 263, 269 (7th Cir. 2004). Under Title VII, Reed can only recover for events that occurred within 300 days of his filing of the charge of discrimination with the EEOC.

In his complaint, Reed identifies the following actions as discriminatory, harassing, or retaliatory: he was issued a disciplinary letter for an overweight truck in 2005; a supervisor refused to buy him lunch and instead borrowed $20 and said "Now I can go and buy lunch for one of my good white drivers" in 2004 or 2005; he was subjected to extra surveillance and road observations before August 2007; he was removed from his route and place on the "punishment route" in 2007; also in 2007, he was told that if he did not like his route he could go back to driving buses or flipping burgers; he was also told in 2007 that he should stop calling Arizona because he would not be given his route back; he was assigned an inferior truck when he first became a roll-off driver in 2007; he was transferred to nights upon returning to work after an injury in April 2008; he was terminated in October 2008; and was denied legal counsel during his grievance proceedings relating to his termination.

In his response in opposition to Allied's motion for summary judgment, Reed only addresses his termination and admits that the events prior to July 2008 are time-barred. (*See* Dkt. 44 at 3). Accordingly, the only claims of discriminatory conduct that are not time-barred are Reed's transfer to nights in April 2008, his discharge in October 2008, and the denial of his grievance. The remaining claims of discrimination are dismissed. *See Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 876 (7th Cir. 2008).

*2. Title VII and Section 1981 Discrimination and Retaliation Claims*

Reed's response in opposition to Allied's summary judgment fails to address any of Reed's discrimination or retaliation claims. Instead, he focuses entirely on the "arbitrator's" denial of his grievance concerning his termination. (*See generally* Dkt. 44). This Court finds that Reed has therefore abandoned those claims. Furthermore, Reed never filed or otherwise claimed an unfair labor charge

7

and the time to do so has expired. *See, e.g.* 29 U.S.C. 160(b) (unfair labor practices charges must be filed within six months of the occurrence). Reed may not raise a new theory of discrimination for the first time in opposition to summary judgment. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 806 (7th Cir. 2011).

In the interest of completeness, this Court will address Reed's discrimination claims for his allegations that are not time-barred. In order to survive summary judgment, Reed needs evidence from which a reasonable jury could find that Allied transferred him to nights, discharged him, and denied his grievance based on his race. Reed provides no such evidence.

For proving discrimination claims there are two recognized methods: the direct method and the indirect method. Reed can prevail under neither method. Direct evidence is that which, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1010 (7th Cir. 1997) (quoting *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)). There is no evidence in the record tying Reed's transfer to nights, his discharge, or the denial of his grievance to his race. This Court therefore proceeds to the indirect method. *See Everroad v. Scott Truck Sys. Inc.*, 604 F.3d 471, 477 (7th Cir. 2010).

Under the indirect method of proof, Reed must establish: (1) he is a member of a protected class; (2) his job performance met his employer's legitimate expectations; (3) he was subjected to a materially adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). If Reed satisfies these requirements, the burden shifts to Allied to offer a legitimate, non-discriminatory reason for the employment action. *Id.* If Allied offers such a reason, the burden shifts back to Reed to show that Allied's reason was merely a pretext. *Id.* This framework applies equally to claims under

Title VII, § 1983, and § 1981. *Id.*

Allied does not dispute that Reed is a member of a protected class. Allied argues that Reed cannot prove that he met Allied's legitimate job performance expectations, Reed was not subject to an adverse employment action, with the exception of his termination, and Reed cannot show that similarly situated employees outside of the protected class were treated more favorably.

Indeed, it is undisputed that Reed had a long history of discipline, primarily for absenteeism and tardiness. Reed does not dispute that he was in fact previously terminated for his absenteeism but was reinstated on a last chance agreement. This Court therefore finds that he cannot show that he was meeting Allied's reasonable job expectations. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001). Reed also cannot show that his transfer to the night shift to accommodate his physical therapy schedule was an adverse employment action because there were no changes to the terms or conditions of employment. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Additionally, Reed cannot identify any comparators. He alleges that one white employee was allowed to remain on the job after failing to report an accident. Reed admits however that he has no facts or personal knowledge to support this claim, only that he heard the employee had denied responsibility for a minor scratch to a customer's concrete wall. Such conclusory hearsay evidence is insufficient to establish a comparator that "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct." *Peele v. Cnty. Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). Accordingly, Reed fails to establish a *prima facie* case of race discrimination. The Court will nevertheless briefly address the remainder of the burden shifting indirect method of proof.

Allied argues that Reed cannot show that its legitimate non-discriminatory reasons for transferring him to the evening shift, terminating his employment, and denying his grievance were pretext for discrimination. To show pretext Reed must show that Allied's proffered reason was dishonest and the true reason was based on discriminatory intent. *Perez v. Illinois*, 488 F.3d 773, 777

9

(7th Cir. 2007). Allied asserts that it transferred him to the evening shift to accommodate his physical therapy schedule. It is undisputed that in early 2008 Reed suffered an injury to his knees that required twice weekly physical therapy sessions. Reed's appointments were scheduled for early afternoon before he completed his shift. Rather than have Reed miss part of his shift twice each week, Allied transferred him to the later shift that started after his appointment. Reed presents no evidence that Allied's true motive was discriminatory. With respect to his termination and the denial of his grievance over his termination, Allied proffers evidence that Reed violated company policy by failing to timely report an incident of damage to a customer's property and proceeded to deny his involvement despite video surveillance showing that he caused the damage. Reed eventually admitted to damaging the customer's property. The employee handbook indicates that he could be subject to termination for such an action. Reed can present no evidence to suggest that Allied's proffered reasons for the shift-change, termination, and denial of grievance for the termination were motivated by racial animus or discriminatory intent. Accordingly, this Court finds that Reed fails under either the direct or the indirect method to create a genuine issue of material fact as to race discrimination.

Allied also moves for summary judgment on Reed's retaliation claim. In his complaint Reed alleges retaliation for complaints that he made to Allied's corporate hotline and to human resources supervisor Cathy Cairo in March 2007. Reed complained that Woods told him he could go back to driving buses or flipping burgers, his shift was changed to nights, and he was terminated. For retaliation claims, the indirect method of proof is identical to discrimination claims. *See, e.g. Kodl v. Bd. of Educ.*, 490 F.3d 558, 562 (7th Cir. 2008). Reed's retaliation claim fails under the indirect method for the same reasons as his race discrimination claims addressed above. Under the direct method, Reed must establish a *prima facie* case of retaliation by showing (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action taken by Allied; and (3) a causal

connection between the two. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005).

Even if Reed arguably engaged in a protected activity by complaining to human resources and by calling the hotline, and his termination is an adverse employment action, Reed cannot show any causal connection between his complaints to human resources or the hotline to Woods' alleged statement, his shift change, or his termination. To establish causation, Reed must show that his protected conduct was a "substantial or motivating factor" in Allied's decisions. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686-87 (7th Cir. 2008). There is simply nothing in the record to tie any of these events with his complaints to the company. Furthermore, the undisputed record shows that Reed was terminated for his conduct on the job, *i.e.* failing to report an accident. A complaint of harassment does not immunize Reed from being disciplined or terminated for inappropriate workplace behavior. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002). Accordingly, this Court finds that Reed is unable to create a genuine issue of fact for his retaliation claim and Allied is entitled to judgment as a matter of law.

**Conclusion**

Based on the foregoing, Allied is entitled to summary judgment as a matter of law on all of Reed's claims. This Court grants Allied's motion for summary judgment [40].

IT IS SO ORDERED.

Date:  September 16, 2014

Entered: _____

United States District Judge